UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND


DORRAN JONES                          :
                                      :
      v.                              :    C.A. No. 08-476ML
                                      :
JOHNSON AND WALES                     :
UNIVERSITY                            :


**REPORT AND RECOMMENDATION**

Lincoln D. Almond, United States Magistrate Judge


**Background**

Before this Court is Defendant Johnson and Wales University's ("JWU") Motion for

Summary Judgment pursuant to Fed. R. Civ. P. 56. (Document No. 35).  In this action, Plaintiff

Dorran Jones ("Plaintiff" or "Jones") filed his Amended Complaint on February 5, 2009 alleging

wrongful termination, defamation, breach of contract, hostile work environment and pay

discrimination as well as claims that he was subjected to unlawful employment discrimination

on the basis of his race, religion, age and disability.

JWU filed its Motion for Summary Judgment on February 16, 2010.  After receiving

several extensions, Plaintiff filed his Objection to JWU's Motion for Summary Judgment

(Document No. 41) on May 26, 2010.  Defendant replied on June 7, 2010.  (Document No. 43).

This matter has been referred to me for preliminary review, findings and recommended

disposition.  28 U.S.C. § 636(b)(1)(B); LR Cv 72.  Neither party has requested oral argument

(LR Cv 7(e)) and, after reviewing the extensive submissions, I have determined that oral

argument would not aid the Court in resolving this Motion.  However, I did request and review

a full copy of Plaintiff's deposition transcript to aid my review of JWU's Motion and Plaintiff's

Objection (See Document Nos. 44 and 45).  After reviewing the Memoranda submitted, and

relevant case law, I recommend that JWU's Motion for Summary Judgment be GRANTED.

**Statement of Facts**[1]

Plaintiff began his employment with JWU on September 9, 2002 as a cook at Chestnuts,

a student dining facility.  (Document No. 36-1, ¶ 3). Dennis Sterlacci was Plaintiff's supervisor.

Id. at ¶ 4. In May 2003, Plaintiff applied for a position as a manager at another student dining

facility, the University Club (the "U Club"), and was ultimately hired to be a manager.  Id. at ¶

5.

While managing the U Club during the 2003-2004 academic year, Sterlacci discussed

with Plaintiff his concerns about Plaintiff's lack of leadership, problems with communication

and over-ordering supplies.  Id. ¶ 6.  In May 2004, in Plaintiff's annual performance evaluation,

Sterlacci listed several areas in which Plaintiff needed to show improvement including lack of

leadership, communication with staff, team building and planning, over-ordering and lack of

initiative.  Id. ¶ 7.  When the 2004 academic year commenced, Sterlacci continued to discuss

---

[1] JWU's Motion for Summary Judgment is accompanied by a Statement of Undisputed Facts (Document No. 36) filed pursuant to Local Rule Cv 56(a).  Plaintiff has not expressly denied or controverted these facts or filed a Statement of Disputed Facts pursuant to Local Rule Cv 56(a)(3). Although Plaintiff is accorded some latitude given his pro se status,  he is not excused from compliance with the Court's procedural rules.  See Mas Marques v. Digital Equip. Corp., 637 F.2d 24, 27 (1st Cir. 1980); Eagle Eye Fishing Corp. v. U.S. Dep't of Commerce, 20 F.3d 503, 506 (1st Cir. 1994).  In fact, on March 1, 2010, the Court issued an Order (Document No. 38) following Plaintiff's submission of an Objection to JWU's Motion for Summary Judgment.  Plaintiff's Objection did not comply with the rules.  Instead of simply rejecting the Objection, the Court allowed Plaintiff additional time (ultimately totaling eighty-two days) to file an Objection which complied with the applicable rules and quoted extensively in the Order from the applicable rules (Fed. R. Civ. P. 56(e)(2) and Local Rule Cv 56(a)) to guide Plaintiff in preparing his Objection.  Plaintiff did not, however, follow the applicable rules in preparing his Objection despite being given significant extra time to respond and specific notice of the applicable rules.  Accordingly, due to Plaintiff's failure to submit a Statement of Disputed Facts, the facts in JWU's Statement of Undisputed Facts are deemed admitted by rule of court.

with Plaintiff certain problems he was having, including Plaintiff's tardiness and his over-ordering of food, which Sterlacci indicated made it difficult for staff to use the refrigerators and freezers and could impact the quality and consistency of the food.  Id. ¶ 8.

On October 22, 2004, Plaintiff obtained a doctor's note indicating that he would be out of work for two and one-half weeks (through November 8, 2004) for medical issues relating to a back injury.  Document No. 36 at ¶ 13.  Plaintiff was unable to return to work as planned and was granted a medical leave of absence through January 9, 2005. Id. at ¶ 14.  On January 10, 2005, Plaintiff returned to work with a doctor's note indicating that he could work a reduced schedule of six hours per day for one week.  On January 17, 2005, Plaintiff's doctor added a restriction prohibiting Plaintiff from repetitive pushing, pulling, twisting and bending.  Id. ¶¶ 15, 16.

On January 24, 2005 and on January 25, 2005, Plaintiff failed to report for work and did not report his absence to Sterlacci. Id. ¶¶ 17, 18.  On January 27, 2005, Plaintiff admitted that he was aware that undercooked meat was being served at the U Club and that he had failed to correct the problem.  Id. ¶ 19.  On January 28, 2005 and February 3, 2005, Plaintiff left the U Club for a few hours during his scheduled shift without permission.  As a result, on January 31, 2005 and February 4, 2005, Sterlacci issued warnings to Plaintiff concerning his unexcused absences and general lack of supervision.  Id. ¶¶ 20-24.  The February 4, 2005 warning issued by Sterlacci was written and indicated that Plaintiff's failure to improve "may result in further disciplinary action up to, and including, termination of employment."  Id. ¶ 24.

Plaintiff's doctor released him to work a schedule of eight-hour days for two weeks beginning on February 4, 2005. Following that, his doctor permitted him to work ten-hour days for two weeks and then twelve hours per day thereafter. He was restricted from lifting more than ten pounds and restricted from repetitive pushing, pulling, twisting or bending. Id. ¶ 25.

On Sunday February 6, 2005, Plaintiff informed Sterlacci that he would need to take the next day, February 7, 2005, off from work. Plaintiff had a pre-arranged court hearing in Boston on February 7, 2005 but neglected to inform Sterlacci until the day before. Accordingly, Sterlacci issued another written warning to Plaintiff on February 11, 2005. Id. ¶ 26.

Leading up to the week of spring break, Plaintiff was instructed to scale back ordering and stocking perishable food products, given the upcoming one-week shutdown. On February 24, 2005, the day before spring break week, the Assistant Director of Dining Services, Kathy DeCotis, inspected the U Club and found it to be stocked with a large amount of perishable food. Id. ¶ 30. During spring break, Plaintiff arrived late for his shift at the University convenience store on two consecutive days. Id. ¶ 31.

On March 29, 2005, Sterlacci inspected the food stock at the U Club and found perishable fruits and vegetables that were spoiled and needed to be discarded. Id. ¶ 33. On March 31, 2005, Sterlacci and DeCotis held a meeting with Plaintiff and David DeHay, the Assistant Manager at the U Club. The meeting was called to address complaints received concerning Plaintiff's lack of leadership and his communication with his Assistant Manager and staff. Id. ¶¶ 34-39.

On April 1, 2005, more than five hundred dollars from the U Club's cash register was missing. Plaintiff did not notify Sterlacci or DeCotis of the missing money for three days. He told his superiors that he was attempting to deal with the shortage himself and that he had left the key to the safe on a general keyring to which several people had access. Id. ¶¶ 40-46. On April 11 and 12, Plaintiff was reprimanded for overordering supplies and on April 12, a student employee complained to DeCotis about Plaintiff's inability to manage the U Club. Id. ¶¶ 47-49.

On April 13, 2005, Sterlacci and DeCotis met with Plaintiff and gave him a written warning detailing the complaints and concerns about his leadership and management of the U Club. They also suspended Plaintiff for three days without pay. While Plaintiff was on unpaid suspension, DeCotis and Sterlacci made the decision to terminate his at-will employment. Sterlacci notified Plaintiff of the decision on April 19, 2005. Id. ¶¶ 51, 52.

On January 3, 2006, Plaintiff filed a charge with the Rhode Island Commission for Human Rights ("RICHR") alleging race, age, religion and disability discrimination. Id. ¶ 53. He requested that his charge be co-filed with the United States Equal Opportunity Commission ("EEOC"). Id. ¶ 54. On January 26, 2006, a representative from the Rhode Island Department of Labor and Training ("DLT") spoke with Carol Lindberg, the Executive Director of Human Resources at JWU, seeking information about the reasons for Plaintiff's termination. Ms. Lindberg gave the DLT Representative information concerning the dates that Plaintiff had received warnings and that she did not think that there was any deliberate gross misconduct on Plaintiff's part. Id. ¶¶ 55-58. The RICHR ultimately found there to be no probable cause with respect to Plaintiff's discrimination charge. Id. ¶ 59. The EEOC adopted the finding and closed

its file.  Id. ¶ 60.  Plaintiff's request for reconsideration was denied by the RICHR on August 28, 2008.  Id. ¶ 61.

**Summary Judgment Standard**

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  When deciding a motion for summary judgment, the Court must review the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor.  Cadle Co. v. Hayes, 116 F.3d 957, 959 (1st Cir. 1997).

Summary judgment involves shifting burdens between the moving and nonmoving parties.  Initially, the burden requires the moving party to aver "an absence of evidence to support the nonmoving party's case."  Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)).  Once the moving party meets this burden, the burden falls upon the nonmoving party, who must oppose the motion by presenting facts that show a genuine "trialworthy issue remains."  Cadle, 116 F.3d at 960 (citing Nat'l Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995); Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994)).  An issue of fact is "genuine" if it "may reasonably be resolved in favor of either party."  Id. (citing Maldonado-Denis, 23 F.3d at 581).

To oppose the motion successfully, the nonmoving party must present affirmative evidence to rebut the motion.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256-57 (1986).  "Even in cases where elusive concepts such as motive or intent are at issue, summary

judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, [or] unsupported speculation." Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990).  Moreover, the "evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve."  Id. (quoting Mack v. Great Atl. & Pac. Tea Co., 871 F.2d 179, 181 (1st Cir. 1989)).  Therefore, to defeat a properly supported motion for summary judgment, the nonmoving party must establish a trialworthy issue by presenting "enough competent evidence to enable a finding favorable to the nonmoving party." Goldman v. First Nat'l Bank of Boston, 985 F.2d 1113, 1116 (1st Cir. 1993) (citing Anderson, 477 U.S. at 249).

**Analysis**

**A.     Wrongful Termination**

JWU moves for summary judgment in its favor with respect to Plaintiff's allegation that he was wrongfully terminated. In Rhode Island, the general rule is that an employee hired for an indefinite period with no contractual right to continued employment is an at-will employee.  At-will employees are subject to discharge at any time for any reason.  See Bartlett v. Am. Power Conversion Co., No. 05-84, 2006 WL 2709404 at *3 (D.R.I. Sept. 20, 2006) (citing DelSignore v. Providence Journal Co., 691 A.2d 1050 (1997)).  Rhode Island does not recognize the common law tort of wrongful termination. See Pacheco v. Raytheon Co., 623 A.2d 464, 465 (R.I. 1993) ("in Rhode Island there is no cause of action for wrongful discharge.") Because it is undisputed that Plaintiff was an at-will employee and Rhode Island does not recognize the tort

of wrongful termination of an at-will employee, I recommend that the Court enter judgment on JWU's behalf as a matter of law on Plaintiff's wrongful termination claim.

### B.    Defamation

Plaintiff alleges that JWU "made numerous false and misleading statements to the Department of Labor and Training, including that plaintiff stole from the safe among other things." Document No. 6 at ¶ 62. Plaintiff also alleges that JWU "did damage Plaintiff and his professional reputation as JWU communicated to Rhode Island's Department of Labor and Training, Worker Compensation Courts, Commission for Human Rights, EEOC, Carol Lindberg, Diane D'Ambra, David DeHay, Michael Downing, Paul Martin, Plaintiff's staff, JWU students and members at JWU of American Culinary Federation, Rhode Island Chapter." Id. ¶ 64. JWU counters that Plaintiff's defamation claims must fail based upon the one-year statute of limitations set forth in R.I. Gen. Laws § 9-1-14. Alternatively, JWU argues that the claims fail as a matter of law due to applicable privileges.

In order to prevail in a defamation action, Plaintiff must prove "(1) the utterance of a false and defamatory statement concerning another; (2) an unprivileged communication to a third party; (3) fault amounting to at least negligence; and (4) damages." Mills v. C.H.I.L.D., Inc., 837 A.2d 714, 720 (R.I. 2003) (citation omitted). At Plaintiff's deposition, he testified that his defamation claim is based on a conversation between JWU's Human Resources Director and a representative of the DLT concerning the reasons for Plaintiff's discharge. (Document No. 45-2 at pp. 44-50).

The Court need not address whether the disputed conversation falls within the four part test articulated by the Rhode Island court. Without reaching the merits, the claim fails for two

distinct reasons.  First, it is undisputed that the telephone conversation relied upon by Plaintiff occurred on January 26, 2006.  Accordingly, the one-year limitations period expired on January 26, 2007.  See R.I. Gen. Laws § 9-1-14.  Plaintiff filed his Complaint on November 19, 2008, well outside the one-year limitations period.  Thus, Plaintiff's defamation claim is untimely.

Second, even if the claim was not time barred, it would still fail because the DLT requested that JWU provide it with the reasons for Plaintiff's termination, thus, the statements made by JWU's representative to the DLT were cloaked with a qualified privilege.  See Bartlett, 2006 WL 2709404 at *3 (stating that a qualified privilege exists "if the occasion for the publication is such that the publisher acting in good faith correctly or reasonably believes that he has a legal, moral or social duty to speak out, or that to speak out is necessary to protect either his own interests, or those of a third person, or certain interests of the public.") As in Bartlett, this Plaintiff has failed to offer evidence that JWU "acted for any reason other than that it believed it had a legal duty to report its reasons for terminating Plaintiff." Id.  Accordingly, I recommend that the District Court enter judgment for JWU on Plaintiff's defamation claim.

### C.    Breach of Contract

Plaintiff's Amended Complaint states that his case is a matter of "breach of contract." In his Amended Complaint, Plaintiff, however, never elaborates on the legal or factual basis for his purported contract claim, and he does not identify the alleged contract that has been breached by JWU.  At his deposition, Plaintiff explained that his breach of contract claim is based on a verbal agreement.  (Document No. 45-2 at pp. 51-52).  He alleges that Sterlacci verbally agreed to provide an employee to assist Plaintiff with his job responsibilities when he returned to work, following his medical leave.  Id.

Plaintiff, however, bears the burden of proving the existence of an enforceable contract. JWU argues that even if the Court credits Plaintiff's claim that Sterlacci promised Plaintiff additional help upon his return, the contract claim still fails for lack of adequate consideration. JWU's argument prevails.  Under Rhode Island law, "[b]ilateral contracts must be supported by sufficient consideration." Delaney v. Kusminski, No. C.A. 02-7096, 2005 WL 1109625 at *2 (R.I. Super. May 4, 2005).  In addition, "Rhode Island law, which reflects the majority position, says that 'consideration consists either in some right, interest or benefit accruing to one party or some forbearance, detriment or responsibility given, suffered or undertaken by the other.'" NEA-RI v. Ret. Bd., 890 F. Supp. 1143, 1159 (D.R.I. 1995).

In this case, the breach of contract claim fails because Plaintiff alleges he was entitled to further consideration simply to perform the job duties he already undertook.  "It is a well-settled rule of law that past consideration will not support a promise...." Meadows v. Langlais Constr. Co., No. C.A. 80-2966, 1984 WL 560340 at *2  (R.I. Super. July 19, 1984).  Even if the Court credits Plaintiff's unsupported claim that Sterlacci promised to provide Plaintiff with an assistant when he returned from his medical leave, there is no consideration running from Plaintiff back to JWU in order to create an enforceable contract.  All Plaintiff did was to return to work, an obligation he already had.  Plaintiff cannot prove the existence of a contract without valid consideration, and his previous work obligations are not sufficient consideration to support the existence of a new contract which contractually obligated JWU to provide him with an employee to assist him in performing his job.  Without evidence creating even a factual issue as to the existence of a valid contract, there certainly can be no claimed breach.  Accordingly, I

recommend that the District Court enter judgment as a matter of law in JWU's favor on Plaintiff's contract claim.

### D.      Employment Discrimination

In his Amended Complaint, Plaintiff alleges, inter alia, that his claim is for "discrimination...in accordance to Rights Act 1964 as amended, The Age Discrimination in Employment Act ("ADEA") of 1967, as amended, American with Disabilities Act ("ADA") and applicable state law." Document No. 6 at 1.  He alleges that he was "treated less favorably than other managers and younger co-manager..." and that he "believes he was discriminated against on the basis of race, age 47...religion (Christian) and physical disability[2] (Back Injured at work on 3/22/2004 and again on 3/26/2004) both reported to his direct supervisor Dennis Sterlacci in that his employer subjected him to disparate treatment based solely on his protected class." Id. at 2, 5.

Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer...to discharge any individual, or otherwise to discriminate against any individual with respect to his...employment, because of such individual's race, color, religion, sex, or national origin...."  42 U.S.C. § 2000e-2(a) and (1).[3]  Thus, a violation of Title VII occurs

---

[2] Defendants convincingly argue that Plaintiff has not offered proof that he is disabled under the ADA, 42 U.S.C. § 12102.  Plaintiff has not even alleged he is disabled under that statute, which would require him to demonstrate a physical or mental impairment that substantially limits one of more of his major life activities.  However, given Plaintiff's failure to refute Defendant's valid reasons for termination, the Court declines to devote any time to a discussion of Plaintiff's alleged disability and instead assumes for purposes of this Motion only, that he meets the disability definition.

[3] The same analysis applies to any state law counts contained in Plaintiff's Complaint.  See Kriegel v. State of Rhode Island, 266 F. Supp. 2d 288, 296 (D.R.I. 2003) (applying federal analysis to claims under FEPA and RICRA); and Russell v. Enterprise Rent-A-Car Co., 160 F. Supp. 2d 239, 265 (D.R.I. 2001) ("FEPA is Rhode Island's analog to Title VII and the Rhode Island Supreme Court has applied the analytical framework of federal Title VII cases to those brought under FEPA.") (citations omitted).  Therefore, this Court will generally refer to Title VII in its analysis, but the analysis will also apply to Plaintiff's claims under FEPA and RICRA.  Moreover, under First Circuit law, Plaintiff's age

whenever race or religion is a motivating factor for an adverse employment action.  In this case,

Plaintiff does not rely on direct evidence of discrimination or a so-called "smoking gun."  Thus,

Plaintiff's proof of a Title VII violation is evaluated pursuant to the familiar three-step, burden-

shifting framework established in McDonnell Douglas Corp. v. Green, 414 U.S. 811 (1973).  See

also St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502 (1993); and Texas Dep't of Cmty. Affairs v.

Burdine, 450 U.S. 248 (1981).  The First Circuit has thoroughly outlined this framework as

follows:

> [STEP ONE]   [T]he plaintiff shoulders the initial burden of
> adducing a prima facie case of unlawful discrimination.  This
> includes a showing that: (1) plaintiff is a member of a protected
> class; (2) plaintiff's employer took an adverse employment action
> against him; (3) plaintiff was qualified for the employment he held;
> and (4) plaintiff's position remained open or was filled by a person
> whose qualifications were similar to his.  Establishment of a prima
> facie case creates a presumption of unlawful discrimination.
>
> [STEP TWO]  Once a plaintiff establishes a prima facie case, the
> burden [of production, not persuasion,] shifts to the employer to
> rebut this presumption by articulating a legitimate, non-
> discriminatory reason for its adverse employment action.
>
> [STEP THREE]  In the third and final stage, the burden devolves
> upon the plaintiff to prove that the reasons advanced by the
> defendant-employer constitute mere pretext for unlawful
> discrimination.  To meet this burden, the plaintiff must prove not
> only that the reason articulated by the employer was a sham, but
> also that its true reason was plaintiff's [membership in a protected
> class]....

---

discrimination claim is governed by the same burden-shifting framework.  Mesnick v. Gen. Electric Co., 950 F.2d 816, 823 (1st Cir. 1991).

Rodriguez-Cuervos v. Wal-Mart Stores, Inc., 181 F.3d 15, 19 (1st Cir. 1999) (citations and footnote omitted).

The First Circuit has instructed that "[t]he burden of making out a prima facie case is 'not onerous.'" Mesnick v. Gen. Electric Co., 950 F.2d 816, 823 (1st Cir. 1991) (quoting Burdine, 450 U.S. at 253). The prima facie case framework established in McDonnell Douglas was "never intended to be rigid, mechanized or ritualistic." Furnco Constr. Corp. v. Waters, 438 U.S. 567, 577 (1978).

It is well established that in order to clear the summary judgment hurdle, the nonmovant must "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). In the employment discrimination context, "the material creating the factual dispute must herald the existence of 'definite, competent evidence' fortifying the plaintiff's version of the truth. Optimistic conjecture, unbridled speculation, or hopeful surmise will not suffice." Vega v. Kodak Caribbean, Ltd., 3 F.3d 476, 479 (1st Cir. 1993) (citations omitted). This Court will indulge Plaintiff and assume arguendo that he has satisfied his burden of establishing a prima facie case of employment discrimination. The Court, however, undertakes this assumption with skepticism, given the failure of Plaintiff to point the Court to specific "competent" evidence supporting his position.

Given the Court's generous presumption, the next step requires JWU to set forth a legitimate, non-discriminatory reason for its adverse employment action. Here, JWU easily meets its burden of production. JWU sets forth in detail numerous instances where Plaintiff's attendance at work was an issue, as well as problems with Plaintiff's job performance and management of the U Club while Plaintiff was an employee of JWU. Thus, JWU has set forth

"'through the introduction of admissible evidence,' reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." (emphasis omitted). <u>Leblanc v. Great Am. Ins. Co</u>, 6 F.3d 836, 845 (1st Cir. 1993). The First Circuit explained, "[i]f the employer advances the required showing, the inference originally generated by the prima facie case drops from sight. In that event, it falls upon the plaintiff (who bears the burden of persuasion throughout) to show that the employer's alleged justification is a mere pretext" for unlawful discrimination. <u>Vega</u>, 3 F.3d at 479. Accordingly, JWU has met its burden of production as to the second step of the burden shifting framework.

It is here, at the third step of the burden-shifting framework that Plaintiff undeniably falls short. The third step requires that Plaintiff prove not only that the reason articulated by the employer was a pretext, but also that its true reason was his race, age, physical disability or religion. Plaintiff must "offer some minimally sufficient evidence, direct or indirect, both of pretext and of the employer's discriminatory animus to prevail in the face of a properly drawn Rule 56 motion." <u>Mesnick</u>, 950 F.2d 825. Plaintiff failed to provide any evidence to the Court to demonstrate that the reasons for his termination, including his absences, overordering of perishables and mismanagement of the U Club were a pretext. It is here that the Court's indulgences and assumptions on Plaintiff's behalf can no longer carry the day. Plaintiff has simply not met his burden of demonstrating that his age (forty-three years old at the time of his termination), his race (African American), his religion (Christian) or his alleged disability were the cause of his termination – a conclusion fueled in substantial part by Plaintiff's failure to submit a Statement of Disputed Facts as required by the Rules and as Plaintiff was reminded by

the Court in its Order dated March 1, 2010 which resulted in JWU's facts being deemed admitted.  After thoroughly reviewing the pleadings and supporting exhibits, Plaintiff has simply not shown, through competent evidence, the existence of a trial-worthy discrimination claim, no factual disputes and Plaintiff's claims for unlawful age, race and religion and disability discrimination fail as a matter of law.

### D.   Harassment

In his Amended Complaint, Plaintiff alleges that following his return from a medical leave in early 2005, he was subjected to harassment while at work.  Specifically, he claims that Sterlacci "mimicked plaintiffs walk and mock[ed] his religious belief by calling [him] Reverend DJ," that "Defendant constantly harassed and picked at Plaintiff and plaintiffs work" and that "Defendant harassed Plaintiff about attending church on Sundays."  Document No. 6 at ¶¶ 42, 43, 55.  In his Objection to the Motion for Summary Judgment, Plaintiff alleges that "Sterlacci was harassing him, knowing that [he] was pressured by being short on staff and unable to physically complete his task."  Document No. 41 at 24.  He goes on to allege that he was refused "management assistances during hiring freeze & staff shortages" and he alleges that letters addressing Plaintiff's performance deficiencies were "irrational" and retaliatory.  Id. at 29.

To prove a claim of a hostile work environment, a plaintiff must establish that (1) he is a member of a protected class; (2) that he was subjected to unwelcome harassment; (3) the harassment was based upon his membership in a protected class; (4) the harassment was sufficiently severe or pervasive so as to alter the conditions of plaintiff's employment and create an abusive work environment; (5) the objectionable conduct was both objectively and

-15-

subjectively offensive; and (6) some basis for employer liability has been established.  Bartlett, 2006 WL 2709404 at *6.

There is no "mathematically precise test" for determining when conduct in the workplace moves beyond the "merely offensive" and enters the realm of unlawful discrimination.  Harris v. Forklift Sys., Inc., 510 U.S. 17, 21-22 (1993).  Rather, "all the circumstances" must be examined to determine whether an environment is "hostile" or "abusive," including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  Landrau-Romero v. Banco Popular De Puerto Rico, 212 F.3d 607, 613 (1st Cir. 2000) (quoting Harris, 510 U.S. at 23).  "Subject to some policing at the outer bounds," the jury should weigh the factors and decide whether the harassment was of a kind that would have affected the conditions of employment for a reasonable person.  Marrero v. Goya of Puerto Rico, Inc., 304 F.3d 7, 19 (1st Cir. 2002) (quoting Gorski v. New Hampshire Dep't of Corr., 290 F.3d 466, 474 (1st Cir. 2002)).  However, "teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment."  Faragher v. City of Boca Raton, 524 U.S. 775, 788. (citations omitted).

JWU argues that the alleged incidents, if true, are not sufficiently "severe or pervasive" to rise to the level of a hostile work environment as a matter of law.  This Court is mindful that, "[w]hile a plaintiff must show 'more than a few isolated incidents of [discriminatory] enmity,' there is no 'absolute numerical standard' by which to determine whether harassment has created a hostile environment."  Danco, Inc. v. Wal-Mart Stores, Inc., 178 F.3d 8, 16 (1st Cir. 1999)

(quoting Snell v. Suffolk Cnty., 782 F.2d 1094, 1103 (2nd Cir. 1986); Vance v. S. Bell Tel. &

Tel. Co., 863 F.2d 1503, 1511 (11th Cir. 1989)); see also Richardson v. New York State Dep't

of Corr. Serv., 180 F.3d 426, 437 (2nd Cir. 1999) ("[T]here is neither a threshold 'magic number'

of harassing incidents that gives rise, without more, to liability as a matter of law, nor a number

of incidents below which a plaintiff fails as a matter of law to state a claim.") (citation omitted).

In fact, "even a single episode of harassment, if severe enough, can establish a hostile work

environment."  Richardson, 180 F.3d at 440 (quoting Torres v. Pisano, 116 F.3d 625, 631 (2nd

Cir. 1997)).

   Even viewing all of the evidence in a light most favorable to Plaintiff, there is no

trialworthy issue on his hostile environment claim related to the allegations that he was called

Reverend DJ or that Sterlacci mocked his limp one time or that Plaintiff felt pressured by a

hiring freeze.  While his allegations portray a work atmosphere that was unpleasant for Plaintiff,

they simply do not rise to the level of a hostile work environment. See Rivera-Martinez v.

Commonwealth of Puerto Rico, No. 05-2605, 2007 WL 16069, *3 (1st Cir. Jan. 4, 2007) ("Title

VII was not intended to be a 'general civility code'; therefore, conduct must be extreme to be

actionable."); Patton v. Indianapolis Pub. Sch. Bd., 276 F.3d 334, 339 (7th Cir. 2002) (Title VII

"does not guarantee a utopian workplace, or even a pleasant one....[but] [a]s long as the hostility

was not based on a protected characteristic, Title VII is not implicated."); Rigau v. Pfizer

Caribbean Corp., 525 F. Supp. 2d 272, 283 (D.P.R. 2007) ("[w]hen followed correctly, [Title

VII] 'will filter out complaints attacking the ordinary tribulations of the workplace, such as the

sporadic use of abusive language, gender-related jokes, and occasional teasing.'").  Plaintiff's

allegations fail as a matter of law, and I recommend that the District Court grant summary judgment for JWU on his hostile work environment claim.

### E.        Pay Discrimination

Plaintiff's final claim is that JWU discriminated against his "pay rate."  Document No. 6 ¶ 63. Plaintiff does not elaborate on this claim nor does he provide any factual support for this allegation.  At his deposition, Plaintiff claimed that he saw a document which showed that David DeHay, an Assistant Manager, received a higher rate of pay than Plaintiff.  Document No. 35 at 29.  Plaintiff does not support his claim by identifying which, if any, statute he relies upon for his claim of pay discrimination.  However, JWU convincingly argues that Plaintiff cannot make a claim of pay discrimination under Title VII, the ADEA or the Rhode Island Fair Employment Practices Act, because all of those statutes require a claimant to first exhaust administrative remedies by filing a charge of discrimination.   Since Plaintiff's RICHR and EEOC discrimination charges did not contain any claims related to pay discrimination, he has not met the exhaustion requirement.  Additionally, JWU notes that the Rhode Island Civil Rights Act (which does not contain a requirement to exhaust administrative remedies) is not a viable alternative for Plaintiff since the applicable one-year statute of limitations bars any potential RICRA claim of pay discrimination.  See Horn v. S. Union, 927 A.2d 292 (R.I. 2007) (holding that the statute of limitations applicable to discrimination claims under RICRA is one year). Accordingly, Plaintiff's pay discrimination claim also fails.

### Conclusion

For the reasons stated, I recommend that Defendant's Motion for Summary Judgment (Document No. 35) be GRANTED as to all claims in Plaintiff's Amended Complaint and that final Judgment enter in favor of Defendant.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within fourteen (14) days of its receipt.  See Fed. R. Civ. P. 72(b); LR Cv 72.  Failure to file specific objections in a timely manner constitutes a waiver of the right to review by the District Court and the right to appeal the District Court's decision.  See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).


  /s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
August 20, 2010